IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


EDITH MAY HULETT,                                3:15-CV-00939-BR

          Plaintiff,                             OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

          Defendant.


EDWIN A. HARNDEN
Barran Liebman LLP
601 S.W. Second Avenue, Suite 2300
Portland, OR 97204
(503) 228-0500

          Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

DAVID MORADO
Regional Chief Counsel
ERIN F. HIGHLAND
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104
(206) 615-2240

          Attorneys for Defendant


1 - OPINION AND ORDER

**BROWN, Judge.**

Plaintiff Edith May Hulett[1] seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

Plaintiff protectively filed her application for DIB on September 29, 2010, and filed her application for SSI on February 25, 2011.[2]  Tr. 18.[3]  Plaintiff alleged a disability onset date of October 28, 2008.  Tr. 18.  Plaintiff's applications were denied initially and on reconsideration.  An

---

[1] Plaintiff is also referred to as Edith May McElroy in the Administrative Transcript of Record.

[2] The ALJ's decision indicates a protective filing date of July 15, 2011, for SSI benefits.  At the hearing, however, Plaintiff's counsel indicated the initial application was February 25, 2011.  Tr. 1415.

[3] Citations to the official transcript of record filed by the Commissioner on January 20, 2016, are referred to as "Tr."

Administrative Law Judge (ALJ) held an initial hearing on January 15, 2013, and a supplemental hearing on July 29, 2013. Tr. 1359-68, 1369-1422.  There was not any testimony given at the first hearing.  At the second hearing Plaintiff, a vocational expert (VE), and a medical expert (ME) testified.  Plaintiff was represented by an attorney at both hearings.

On August 12, 2013, the ALJ issued an opinion in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 18-31.  On March 26, 2015, that decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  Tr. 9-11.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).


## BACKGROUND

Plaintiff was born on August 15, 1968.  Tr. 604.  Plaintiff was 45 years old at the time of the hearings.  Plaintiff has a GED and an associate's degree in accounting.  Tr. 29, 1409.  The ALJ found Plaintiff has past relevant work experience as a caregiver, customer-service employee, and telephone surveyor/solicitor.  Tr. 29.

Plaintiff alleges disability due to diabetes mellitus with secondary effects, gastro-intestinal disorder, coronary artery disease, plantar fasciitis, affective disorder, and anxiety disorder.  Tr. 21.  Plaintiff also alleges she suffers from

3 - OPINION AND ORDER

thyroiditis, hyperthyroidism, and hypertension.  Tr. 21, 618,
1355.

Except when noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 24-29.


## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th
Cir. 2012).  To meet this burden, a claimant must demonstrate her
inability "to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which . . . has lasted or can be expected to last for
a continuous period of not less than 12 months."  42 U.S.C.
§ 423(d)(1)(A).  The ALJ must develop the record when there is
ambiguous evidence or when the record is inadequate to allow for
proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d
881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d
453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.  42
U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.,*

4 - OPINION AND ORDER

682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's testimony, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commis-

sioner determines the claimant is engaged in substantial gainful activity (SGA).  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a

day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since her October 28, 2008, alleged onset date.  Tr. 20.

At Step Two the ALJ found Plaintiff has the severe impairments of diabetes mellitus and its secondary effects, gastro-intestinal disorder, coronary artery disease, plantar fasciitis, affective disorder, and anxiety disorder.  Tr. 21. The ALJ also found Plaintiff has the nonsevere impairments of thyroiditis, hyperthyroidism, and hypertension.  Tr. 21.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 21.  The ALJ found Plaintiff's diabetes mellitus does not meet Listing 9.00(B)(5) because "there is no evidence that the [Plaintiff] experiences hyperglycemia, diabetic ketoacidosis, chronic hyperglycemia or hypoglycemia."  Tr. 22. The ALJ found Plaintiff has the RFC to perform sedentary work and can occasionally lift or carry 10 pounds; can frequently lift or carry less than 10 pounds; can stand or walk for two hours in an eight-hour workday; can sit for six hours in an eight-hour workday; cannot engage in climbing ropes, ladders and scaffolds; can occasionally climb stairs as well as stoop, crawl, crouch, and kneel; can have occasional contact with the public,

supervisors, and co-workers; and cannot work near hazardous conditions or at any heights.  Tr. 24.

At Step Four the ALJ concluded Plaintiff is not capable of performing her past relevant work as a caregiver, customer-service employee, or telephone surveyor/solicitor.  Tr. 29.

The ALJ also found at Step Five that Plaintiff could perform other jobs that exist in the national economy.  Tr. 30. Accordingly, the ALJ found Plaintiff is not disabled.


### DISCUSSION

Plaintiff contends the ALJ erred when he (1) failed to conclude at Step Three that Plaintiff meets or equals Listing 9.00(B)(5); (2) improperly rejected the opinions of Plaintiff's treatment providers; (3) improperly rejected Plaintiff's subjective symptom testimony; (4) improperly gave "little weight" to the lay-witness testimony of Plaintiff's spouse; and (5) failed to include all relevant limitations in his hypothetical posed to the VE.

**I.  The ALJ did not err at Step Three when he found Plaintiff does not meet the characteristics of Listing 9.00(B)(5).**

As noted, at Step Three the ALJ found Plaintiff's medically determinable impairments do not meet or medically equal one of the Listed Impairments.  Specifically, the ALJ concluded Plaintiff does not satisfy the criteria of Listing 9.00(B)(5) pertaining to her diabetes mellitus.  Plaintiff contends the ALJ

9 - OPINION AND ORDER

erred because the medical record is replete with references to her hyperglycemia, diabetic ketoacidosis, chronic hyperglycemia, and hypoglycemia.

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim.  To *equal* a listed impairment, a claimant must establish symptoms, sign and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999)(emphasis in original).

Listing 9.00, which covers endocrine disorders, does not set out specific requirements for such disorders.  *See* 20 C.F.R. Part 404, Subpart P, Appendix I.  Listing 9.00(B) provides "impairments that result from endocrine disorders [are evaluated] under the listing for other body systems."  Complications related to diabetes, for example, are evaluated based on the affected body system.  Instead of analyzing a diabetic condition such as diabetic ketoacidosis, therefore, the proper approach is to analyze the "resulting complications" such as "cardiac arrhythmias under 4.00, intestinal necrosis under 5.00, and cerebral edema and seizures under 11.00."  Listing 9.00(B)(5)(a)(I).  Although the medical records contain many references to the diabetic symptoms experienced by Plaintiff, there is not any evidence of the resulting complications that

reflect the impairments found in Listing 9.00(B)(5).

On this record the Court concludes the ALJ did not err at Step Three because the medical records do not reflect the characteristics of Listing 9.00(B)(5).

## II. The ALJ did not err when he evaluated Plaintiff's treating medical providers' opinions.

Plaintiff contends the ALJ erred when he gave "little weight" to the opinions of Plaintiff's treating medical providers: Steve Smart, M.D.; Elizabeth Gabay, M.D.; Paula Wichienkuer, M.D.; Kelly Clouse, M.D.; and Nancy Lee, LMHC. Plaintiff argues the ALJ did not provide specific and legitimate reasons for disregarding the opinions of these providers.

### A. Standards

The opinion of a treating physician is generally accorded greater weight than the opinion of an examining physician, and the opinion of an examining physician is accorded greater weight than the opinion of a reviewing physician. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). To reject an uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Specific, legitimate reasons for rejecting an examining physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, and

11 - OPINION AND ORDER

inconsistency with a claimant's daily activities.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).

Medical sources are divided into two categories: "acceptable" and "not acceptable."  20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians and psychologists.  20 C.F.R. § 416.902.  Medical sources classified as "not acceptable" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors.  SSR 06-03p, at *2.  Factors the ALJ should consider when determining the weight to give an opinion from those "important" sources include the length of time the source has known the claimant and the number of times and frequency that the source has seen the claimant, the consistency of the source's opinion with other evidence in the record, the relevance of the source's opinion, the quality of the source's explanation of his opinion, and the source's training and expertise.  SSR 06-03p, at *4.  On the basis of the particular facts and the above factors, the ALJ may assign a not-acceptable medical source opinion either greater or lesser weight than that of an acceptable medical source.  SSR 06-03p, at *5-6.  The ALJ, however, must explain the weight assigned to such sources to the extent that a claimant or subsequent reviewer may follow the ALJ's reasoning.  SSR 06-03p, at *6.

**B.    Steven Smart, M.D.**

The ALJ gave little weight to Dr. Smart's opinion that claimant's impairments would cause her to miss more than four days of work per month because the ALJ found Dr. Smart's conclusion was "inconsistent" with the medical record outlined in his opinion.  Tr. 29.

Dr. Smart began treating Plaintiff in 2005.  On September 3, 2007, Dr. Smart completed a cardiac RFC questionnaire in which he identified Plaintiff's symptoms at that time as chest pain, fatigue, weakness, palpitations, and dizziness.  Dr. Smart indicated Plaintiff was capable of "low-stress jobs," but he estimated she would be absent from work "about four days per month" due to her impairments.  Tr. 252-56.

Dr. Smart's opinion was dated more than a year before Plaintiff's alleged onset date of October 28, 2008.  "Medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 155, 1165 (9th Cir. 2008).  Thus, as Defendant contends, if there was any error on the part of the ALJ when he rejected Dr. Smart's opinion, it was harmless.

On this record the Court concludes the ALJ did not err when he gave limited weight to Dr. Smart's opinion because Dr. Smart's opinion predated Plaintiff's alleged onset of disability by more than a year and there is not substantial

medical evidence in the record to support Dr. Smart's opinion.

**C.    Elizabeth Gabay, M.D.**

The ALJ gave little weight to Dr. Gabay's opinion that Plaintiff's impairments would limit her ability to concentrate and would cause her to miss 16 hours or more of work per month. The ALJ found "the combination of medical evidence and [Plaintiff's] activities of daily living do not show that her condition is that severe." Tr. 29.

Dr. Gabay completed a treating-physician questionnaire in January 2012. Tr. 1187-90. She had treated Plaintiff "intermittently" since November 2011. Dr. Gabay estimated Plaintiff's ability to concentrate is impaired by "50%," and Plaintiff would be absent from a job for 16 hours or more a month as a result of "uncontrolled diabetes, uncontrolled anxiety and depression, leg and shoulder pains, frequent diarrhea, probably from diabetes." Tr. 1189-90.

The ALJ concluded the medical evidence did not support Dr. Gabay's opinion. Although Plaintiff has diabetic foot ulcers, she walks without assistance, has a normal gait, is able to bear full weight on her left foot, and wears normal shoes. Tr. 26. The record also reflects Plaintiff's diabetes is controlled with treatment, she has received conservative care for her gastro-intestinal disorder, her diarrhea is intermittent, and she takes over-the-counter medications to treat her diarrhea.

Tr. 26.

         The ALJ also concluded the earlier medical records did
not support Dr. Gabay's opinion.  For example, in July 2010
Plaintiff reported she suffered from stress and anxiety as a
result of her family dynamics and social situation arising
primarily from the "circumstances" of her eldest daughter.
Tr. 891.  The treating physician at that time reported these
"social stressors" suggested Plaintiff's stress was mostly
situational and were contributing to Plaintiff's mental state.
Tr. 892.  In a November 2010 emergency-room visit Plaintiff was
oriented and she had normal affect, concentration, judgment,
insight, and memory.  Tr. 1053.  In March 2011 Plaintiff was not
experiencing anxiety, was cooperative, had normal judgment, and
was alert and oriented.  Tr. 1120-21.  In February 2012 and
March 2012 Dr. Gabay noted Plaintiff was alert; cooperative; and
had normal mood, affect, attention span, and concentration.
Tr. 1258, 1269.  In August 2012 Dr. Gabay reiterated these same
findings.  Tr. 1246.

         On this record the Court finds the ALJ did not err when
he gave limited weight to Dr. Gabay's opinion because the ALJ
provided legally sufficient reasons supported by substantial
evidence in the record for doing so.

         **D.  Paula Wichienkuer, M.D.**

         The ALJ gave "some weight" to Dr. Wichienkuer's

assessment that Plaintiff has a less than sedentary RFC, but the ALJ gave "little weight" to Dr. Wichienkuer's opinion that Plaintiff has marked mental-health limitations.  Tr. 28.

Dr. Wichienkuer completed a questionnaire in July 2013 regarding her treatment of Plaintiff.  Tr. 1209-13.  Although her evaluation of Plaintiff was similar to Dr. Gabay's evaluation and Dr. Wichienkuer indicated she had treated Plaintiff beginning in July 2011, Dr. Wichienkuer appears as the attending physician for Plaintiff on only one medical-record entry dated August 2011, which was almost two years before she completed the questionnaire.  Tr. 1332.  In addition, the ALJ pointed out that the medical record overall does not support Dr. Wichienkuer's opinion.

"Generally, the longer a treating source has treated [a claimant] and the more times [the claimant] ha[s] been seen by a treating source, the more weight we will give to the source's medical opinion."  20 C.F.R. §§ 404.1527(c)(2)(I).

Here the ALJ evaluated Dr. Wichienkuer's opinion, but the ALJ properly took into account that Dr. Wichienkuer only saw Plaintiff once, that Dr. Wichienkuer had limited knowledge of Plaintiff's limitations, and that the medical record did not support Dr. Wichienkuer's opinion.  *See Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001)(noting the ALJ may discount the opinion of a treating physician who has not seen the patient

16 - OPINION AND ORDER

long enough to develop a "longitudinal picture").

On this record the Court concludes the ALJ did not err when he gave limited weight to Dr. Wichienkuer's opinion because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**E.    Kelly Clouse, M.D.**

Dr. Clouse treated Plaintiff between December 2005 and August 2007 regarding her depression and anxiety disorder. During that time Dr. Clouse assessed Plaintiff with Global Assessment of Functioning (GAF) scores[4] ranging between 51 and 58 at various times during that period.  Tr. 268-301.

A GAF score is merely a rough estimate of an individual's psychological, social, or occupational functioning used to reflect an individual's need for treatment, but it does not have any direct correlative work-related or functional limitations.  *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th

---

[4] Although the fifth edition of the *Diagnostic and Statistical Manual of Mental Disorders* issued May 27, 2013, abandoned the GAF scale in favor of standardized assessments for symptom severity, diagnostic severity, and disability (*see Diagnostic and Statistical Manual of Mental Disorders V* (DSM-V) 16 (5th ed. 2013)), at the time of Plaintiff's assessment and the ALJ's opinion the GAF scale was used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100 (*see Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV) 31-34 (4th ed. 2000)).  In the fourth edition, a GAF of 51-60 indicated moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).

Cir. 1998).  *See also* 65 Fed.Reg. 50746, 50764-65 (Aug. 21, 2000) ("The GAF scale . . . is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association.  It does not have a direct correlation to the severity requirements in our mental disorders listings.").  *See also McFarland v. Astrue*, 288 Fed. App'x. 357, 359 (9th Cir. 2008).

       The ALJ weighed Dr. Clouse's assessment of Plaintiff's GAF scores and gave "some weight" to the higher GAF score, but gave "little weight" to the lower GAF scores as "inconsistent" with the medical record and Plaintiff's activities of daily living.  Tr. 28.  For example, as noted, in July 2010 Plaintiff reported she suffered from stress and anxiety as a result of her family dynamics and social situation arising primarily from the circumstances of her eldest daughter.  Tr. 891.  The treating physician at that time reported these "social stressors" suggested Plaintiff's stress was mostly situational and were contributing to Plaintiff's mental state.  Tr. 892.  In March 2011 during an emergency-room examination regarding her foot, Plaintiff was not experiencing anxiety, was cooperative, had normal judgment, was alert, and was not in acute distress.  Tr. 1120-21.  The ALJ noted the medical records reflect even though Plaintiff has diabetic foot ulcers, she walks without assistance, has a normal gait, is able to bear full weight on her

left foot, and wears normal shoes.  Tr. 26.  The medical records also reflect Plaintiff's diabetes is controlled with treatment, she has received conservative care for her gastro-intestinal disorder, her diarrhea is intermittent, and she takes over-the-counter medications to treat her diarrhea.  Tr. 26.

As noted, Dr. Clouse's various GAF assessments predated the alleged onset of Plaintiff's disability date of October 28, 2008.  Tr. 267-307.  Dr. Clouse's assessment of Plaintiff's GAF as between 51 and 58 was made during the period of December 2005-August 2007.  Although GAF scores of 51-60 indicate moderate symptoms or moderate difficulty in social, occupational, or school functioning, Dr. Clouse did not indicate Plaintiff has any corollary functional limitations.

The Court concludes, therefore, the ALJ did not err when he gave little weight to Dr. Clouse's opinion because it predated Plaintiff's alleged onset of disability; Dr, Clouse's opinion did not include any functional limitations; and, as noted, there is not substantial medical evidence in the record to support Dr. Clouse's opinion.

**F.   Nancy Lee, LMHC**

On December 19, 2011, LMHC Lee, a licensed mental-health care professional, performed a consultative evaluation of Plaintiff.  Tr. 1324.  LMHC Lee diagnosed Plaintiff with depression and anxiety disorder.  Tr. 1330.  The ALJ gave

19 - OPINION AND ORDER

LMHC Lee's opinion only "some weight" on the basis that there was
insufficient evidence to support her opinion that Plaintiff's
limitations were disabling.   Tr. 28.

Defendant contends the ALJ properly discounted LMHC
Lee's opinion because she did not assess any functional
limitations.   Defendant also contends to the extent there was any
error, it was harmless because the ALJ found Plaintiff has the
severe impairments of affective disorder and anxiety disorder.
Tr. 21.

As noted, medical sources are divided into two
categories:  "acceptable" and "not acceptable."  20 C.F.R.
§ 416.902.  Acceptable medical sources include licensed
physicians and psychologists.  20 C.F.R. § 416.902.  Medical
sources classified as "not acceptable" include, but are not
limited to, nurse practitioners, therapists, licensed clinical
social workers, and chiropractors.  SSR 06-03p, at *2.  Factors
the ALJ should consider when determining the weight to give an
opinion from those "important" sources include the length of time
the source has known the claimant and the number of times and
frequency that the source has seen the claimant, the consistency
of the source's opinion with other evidence in the record, the
relevance of the source's opinion, the quality of the source's
explanation of his opinion, and the source's training and
expertise.  SSR 06-03p, at *4.  On the basis of the particular

20 - OPINION AND ORDER

facts and the above factors, the ALJ may assign a not-acceptable medical source either greater or lesser weight than that of an acceptable medical source.  SSR 06-03p, at *5-6.  Similarly, when a source's opinion does not assign any specific limitations, an ALJ need not provide reasons for rejecting the opinion because none of the conclusions were actually rejected.  *Turner v. Comm'r. Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010).

Here, although LMHC Lee concluded Plaintiff suffered from depression and anxiety, she did not identify any specific work-related or functional limitations nor express an opinion as to Plaintiff's ability to work.

The Court concludes, therefore, that the ALJ did not err when he gave only "some weight" to LMHC Lee's opinion because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**III. The ALJ did not err when he found Plaintiff's testimony was not fully credible.**

Plaintiff alleges the ALJ erred by failing to provide clear and convincing reasons to support his finding that Plaintiff's testimony was not entirely credible.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and must show the impairment or combination of impairments could reasonably be expected to

21 - OPINION AND ORDER

produce some degree of symptom. *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id.* The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834).

Plaintiff testified at the hearing on July 29, 2013, that she stays in her room most of the time and only goes out for doctors' appointments. She does not prepare meals, but she is able to take care of her personal needs. Tr. 1393, 1412-13. Plaintiff cared for her father who lived with her until 2010. Tr. 1398. She also helped take care of her granddaughter to a limited extent and has changed her diaper when needed. Tr. 1396. As recently as December 2012 Plaintiff indicated she walked seven times per week for exercise. Tr. 1236. Plaintiff stated her most serious conditions were diabetic neuropathy and diarrhea. Tr. 1399-1400. She also stated she was losing her eyesight, had

uncontrolled diabetes, and experienced anxiety and depression. Tr. 1401, 1403, 1406.

The ALJ concluded Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. However, [Plaintiff's] statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely credible." Tr. 25. The ALJ cited numerous examples from the medical records when he determined the medical evidence did not support Plaintiff's allegations. Tr. 26-27. For example, although Plaintiff has diabetic foot ulcers, she walks without assistance, has a normal gait, is able to bear full weight on her left foot, and wears normal shoes. Tr. 26. Moreover, Plaintiff's diabetes is controlled with treatment, she has received conservative care for her gastro-intestinal disorder, her diarrhea is intermittent, and she takes over-the-counter medications to treat the diarrhea. Tr. 26.

On this record the Court finds the ALJ did not err when he found Plaintiff was not fully credible because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

**IV. The ALJ did not err when he found the lay-witness testimony of Roger Hulett, Plaintiff's husband, was not credible.**

Plaintiff contends the ALJ erred when he rejected the lay-witness testimony of Plaintiff's husband, Roger Hulett. In his Third-Party Function Report dated April 30, 2011, Roger Hulett

23 - OPINION AND ORDER

indicated Plaintiff stays in her room most of the time, she has anxiety issues, and she has diabetes problems.  Tr. 638-45.  The ALJ gave "little weight" to the opinion of Roger Hulett "as he merely corroborates [Plaintiff's] subjective symptoms" that the ALJ properly found were not credible.  Tr. 29.

When determining whether a claimant is disabled, the ALJ must consider lay-witness testimony concerning a claimant's limitations and ability to work.  *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).  If the ALJ wishes to discount the testimony of lay witnesses, he "must give reasons that are germane to each witness."  *Id.* (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)).  Germane reasons for discrediting a witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  *See also Williams v. Astrue*, 493 Fed. App'x 866 (9th Cir. 2012).

Here the ALJ found Roger Hulett's testimony was merely "a corroboration" of Plaintiff's testimony which the ALJ properly discredited on the ground that Plaintiff's statements regarding her impairments and limitations were not supported by her daily activities nor by the medical record.

On this record the Court concludes the ALJ provided legally sufficient reasons for rejecting the lay-witness testimony of

Roger Hulett.

**V.    The ALJ did not pose an inaccurate hypothetical to the VE at Step Five.**

Plaintiff contends the ALJ erred at Step Five when he found Plaintiff is able to perform jobs that exist in the national economy.  Plaintiff asserts the ALJ failed to include all of Plaintiff's limitations in his hypothetical posed to the VE.

"An ALJ must propound a hypothetical question that is based on medical assumptions supported by substantial evidence in the record that reflects all the claimant's limitations." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  "The hypothetical should be 'accurate, detailed, and supported by the medical record.'"  *Id.* (quoting *Tackett*, 180 F.3d at 1101).  It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by "substantial evidence in the record."  *Id.*

As noted, the ALJ found Plaintiff has the RFC to perform sedentary work and can occasionally lift or carry 10 pounds; can frequently lift or carry less than 10 pounds; can stand or walk for two hours in an eight-hour workday; can sit six hours in an eight-hour workday; cannot engage in climbing ropes, ladders and scaffolds; can occasionally climb stairs as well as stoop, crawl, crouch, and kneel; can have occasional contact with the public, supervisors, and co-workers; and cannot work near hazardous conditions or at any heights.  Tr. 24.  At the July 2013 hearing

25 - OPINION AND ORDER

the ALJ posed a hypothetical to the VE that included all of the
limitations from his evaluation of Plaintiff's RFC.  Tr. 1418-20.
Based on that hypothetical, the VE testified a claimant with
those limitations could perform the sedentary jobs of nut-sorter,
final assembler-optical goods, and wireworker-semiconductors.
Tr. 30, 1419-20.

On this record the Court concludes the ALJ did not err at
Step Five when he relied on the VE's testimony and found
Plaintiff could perform other jobs that exist in the national
economy.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the
Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 23rd day of November, 2016.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge

26 - OPINION AND ORDER